IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **LISA JONES o/b/o C.C.J., a minor,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CAROLYN W. COLVIN,**<br>**ACTING COMMISSIONER OF SOCIAL**<br>**SECURITY,** )<br>)<br>)<br>)<br>**Defendant.** ) | **No. 2:16-CV-02024-TMP** |

_____

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

_____

Before the court is plaintiff Lisa Jones's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application on behalf of C.C.J., a minor, for supplemental security income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.* (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 12.) For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. FINDINGS OF FACT

On September 16, 2009, Jones applied for supplemental security

_____

[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed.

income on C.C.J.'s behalf under Title XVI of the Act.  (R. 89.)
The application alleged disability beginning on March 20, 2009, due
to attention deficit hyperactivity disorder, dyslexia, mood
disorder, headaches, dizzy spells, depression, hip pain, stomach
issues, and bad balance.  (R. 288.)  The Social Security
Administration ("SSA") denied the application initially and upon
reconsideration.  (R. 89.)  At Jones's request, a hearing was held
before an Administrative Law Judge ("ALJ") on December 6, 2011.
(Id.)  On February 2, 2012, the ALJ issued a decision denying
Jones's request for benefits after finding that C.C.J. did not have
an impairment or combination of impairments that would constitute a
disability under the Act.  (R. 89-106.)  At Jones's request, the
SSA's Appeals Council agreed review the ALJ's decision.  (R. 114.)
On July 1, 2013, the Appeals Council vacated and remanded the ALJ's
decision. (R. 113.)  In its order, the Appeals Council stated that
Jones submitted additional evidence relevant to the issues and
period considered by the ALJ which suggested that she may have
greater functional limitations than found in the ALJ's decision,
specifically noting a February 21, 2012 assessment from C.C.J.'s
treating physician, Derek Michael Kelly, M.D.  (R. 114.)  Upon
remand, the Appeals Council specifically instructed the ALJ to (1)
obtain additional evidence concerning C.C.J.'s impairments in order
to complete the administrative record in accordance with the

regulatory standards regarding consultative examination and existing medical evidence; and (2) obtain evidence from a medical expert to clarify whether the claimant's impairment meets or equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (20 CFR 416.927(f) and SSR 96-6p. (R. 114-115.)

The ALJ held a second hearing on January 28, 2014. (R. 12.) Prior to the hearing, the ALJ scheduled C.C.J. for an orthopedic consultative examination with hip radiographs, with Disability Determination Services on October 16, 2016, at Jackson Clinic North. (Id.) Based on her counsel's advice and assertion that Dr. Kelly could furnish the requisite information, C.C.J. did not attend the scheduled consultative examination. (Id.) On July 9, 2014, the ALJ issued a decision denying Jones's request for benefits. (Id.) The ALJ first determined that Jones had not established good cause for failing to attend the scheduled consultative examination. (R. 12-13.) The ALJ continued to make alternative findings on the merits, and determined that C.C.J. had the following severe impairments: slipped capital femoral epiphysis ("SCFE"), voiding disorder, tethered spinal cord, headaches, gastrointestinal disorders, specific learning disability (reading), articulation disorder, and affective mood disorder. (R. 16.) However, the ALJ again determined that C.C.J. did not have an impairment or combination of impairments that would constitute a

disability under the Act. (R. 13-34.) In making this finding, the ALJ considered C.C.J.'s history of bilateral SCFE and hip impairments, but noted that she demonstrated a full range of motion in her hips in August 2009, July 2011, and August 2011, and her gait was within normal limits in August 2009 and August 2010. (R. 20-21.) The ALJ further noted that Jonathan G. Schoenecker, M.D., Ph.D., evaluated C.C.J. in March 2012 and performed revision surgery in the form of a right osteotomy and open fixation of SCFE on July 3, 2012. (R. 21.) The ALJ specifically noted Dr. Kelly's August 2012 statement that C.C.J. was "doing great," and his characterization of C.C.J.'s hip as benign following his review of the radiographs. (R. 21.) Dr. Kelly also discharged C.C.J. from orthopedic care because she was "doing quite well" in January 2013. (R. 21.) The ALJ pointed out that Jones testified that she stopped taking C.C.J. to Dr. Kelly every month because he had nothing further to offer. (R. 21.) In July 2013, C.C.J. reported pain and popping in her hips, but Dr. Kelly noted she had been able to exercise and lose weight; his examination again revealed a good range of motion. In January 2014 Dr. Kelly characterized her hip pain as "fairly well controlled." (R. 22.) The ALJ further considered Dr. Kelly's opinions at two of these assessments; on February 24, 2012, he found marked limitations in her ability to move about and manipulate objects and to care for herself; and on

January 13, 2014, he found a marked limitation in her ability to move about and manipulate objects, but no more than moderate limitations in the remaining domains. (R. 25.) The ALJ also specifically examined the six functional equivalence domains. (R. 26-34.) The ALJ accepted Dr. Kelly's determination that C.C.J. exhibited a marked limitation in moving about and manipulating objects. (R. 31.) However, the ALJ noted the record's indication that C.C.J. had improved in this regard, including Dr. Kelly's assessment that she had a "really good gait" and her range of motion was "as good as it has ever been" in January 2013. (R. 31.) The ALJ also noted that C.C.J. walked into the hearing room without an assistive device. (Id.) On November 25, 2015, the Appeals Council denied Jones's request for review of the ALJ's second decision. (R. 1.) Therefore, that decision became the final decision of the Commissioner. (Id.)

On January 12, 2016, Jones filed the instant action. (ECF No. 1.) Jones argues that the ALJ erred by: (1) concluding that C.C.J.'s hip disorder did not meet the criteria of Childhood Disability Listing 101.13; (2) failing to obtain an updated medical opinion regarding medical and/or functional equivalency impairments which contemplated all of Jones's combined impairments; (3) failing to properly evaluate and accord weight to the opinions of Dr. Kelly; and (4) improperly characterizing Jones's decision to not

attend the scheduled consultative examination as without "good cause." (ECF No. 13.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)).  If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way."  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)).  Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)).  Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.    The Three-Step Analysis**

Section 1382c(a)(3)(C)(i) of the Act states that:

An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. 42 U.S.C. § 423(d)(5)(a); Lowery v. Comm'r, Soc. Sec. Admin., 55 F. App'x 333, 341 (6th Cir. 2003).

A child's entitlement to social security benefits is determined by a three-step sequential analysis set out in the Social Security Regulations. See 20 C.F.R. § 416.924. First, the child must not be engaged in substantial gainful activity. See 20 C.F.R. § 416.924(b). Second, a finding must be made that the child suffers from a medically determinable severe impairment. See 20 C.F.R. § 416.924(c). In the third step, the ALJ determines whether the impairment or combination of impairments meets, medically equals, or functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, App'x 1. See Peck o/b/o A.M. v. Comm'r of Soc. Sec., No. 114CV01252STADKV, 2017 WL 4074613, at *2 (W.D. Tenn. Sept. 14, 2017). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not

meet or equal a listed impairment, the ALJ must find that the child is not disabled. <u>See</u> 20 C.F.R. § 416.924(d).

A child's impairment is "functionally equal" to a listed impairment "if the child has an extreme limitation in one area of functioning or a marked limitation in two areas of functioning. <u>See</u> <u>Millen v. Astrue</u>, No. 2:13-cv-02148-JPM-cgc, 2016 WL 2894927, at *3 (W.D. Tenn. May 18, 2016) (citing <u>Miller ex rel. Devine v. Comm'r of Soc. Sec.</u>, 37 F. App'x. 146, 148 (6th Cir. 2002)); 20 C.F.R. § 416.926a(a). A child's functional equivalency is assessed in terms of six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ considered the three-step sequential analysis set forth in the Social Security Regulations to determine whether C.C.J. was or was not disabled. (R. 14.) At step one, the ALJ found that C.C.J. had not engaged in substantial gainful activity since September 16, 2009, the date the application was filed. (R. 16.) At step two, the ALJ found that C.C.J. had severe impairments of SCFE, voiding disorder, tethered spinal cord, headaches, gastrointestinal disorders, specific learning disability, articulation disorder, and affective mood disorder

(Id.)  Finally, at step three, the ALJ found that C.C.J. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the listed impairments set forth in 20 C.F.R. § 416.924(a)-(d)(R. 19.)  As a result, the ALJ concluded that C.C.J. was not disabled, as defined in the Social Security Act.  (R. 34.)

**C.  The ALJ's Determination That C.C.J.'s Hip Disorder Did Not Meet or Functionally Equal the Listings Was Supported by Substantial Evidence**

Jones argues that the ALJ erred by concluding that C.C.J.'s hip disorder and SCFE did not meet the criteria of Childhood Disability Listing 101.03.  At step three, "[a]n administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."  Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011) (citing Lawson v. Comm'r of Soc. Sec., 192 F. App'x 521, 529 (6th Cir. 2006)).  The Sixth Circuit has stated that the ALJ needs to "'actually evaluate the evidence,' compare it to the requirements of the relevant Listing, and provide an 'explained conclusion, in order to facilitate meaningful judicial review.'"  Harvey v. Comm'r of Soc. Sec., No. 16-3266, 2017 WL 4216585, at *5 (6th Cir. Mar. 6, 2017) (quoting Reynolds, 424 F. App'x at 416).  However, it is the claimant's burden to establish that her

impairment meets a listing, and if the claimant has not met that burden, then any error at step three is harmless.  See Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014).  To meet Listing 101.03, a claimant must have "surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 101.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 101.03.   Section 101.00B2b defines "inability to ambulate effectively" as an "extreme limitation . . . defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 101.00B2b.

While the ALJ never directly discussed Listing 101.03 in his opinion, there is substantial evidence in the record to support his overall conclusion that C.C.J.'s hip disorder and SCFE did not meet the requirements of the Listing.  An ALJ is not obligated to detail "every consideration that went into the step three determination" and there is no heightened articulation standard where the ALJ's step three findings are supported by substantial evidence.  Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006).  Thus, it is acceptable to "search the ALJ's entire decision for statements

supporting his step three analysis." See Staggs v. Astrue, No. 2:09-cv-00097, 2011 WL 3444014, at *3 (M.D. Tenn. 2011) (citing Bledsoe, 165 F. App'x at 411).  Here, the ALJ discussed C.C.J.'s mobility at length, and, relying on Dr. Kelly's opinion, found that she had a marked limitation in "moving about and manipulating objects," but concluded that the hip disorder did not create an extreme limitation in that domain of functioning.  (R. 31.)  The ALJ specifically noted Dr. Kelly's own evaluation that C.C.J. exhibited a "really good gait" and characterized her hip range of motion as "as good as it has ever been" in January 2013.  (Id.) This evidence, which ultimately led to the ALJ finding that C.C.J.'s ability to ambulate effectively was markedly limited but not extremely limited - the standard contemplated by Listing 101.03 - supports the ALJ's finding that "[t]he claimant is unable to establish presumptive disability."  (R. 19.)  Nowhere in her brief does Jones cite to evidence in the record that would establish that C.C.J.'s hip disorder or SCFE met or equaled the relevant Listing. In fact, Dr. Kelly's own records reveal that C.C.J.'s SCFE only exhibited a marked limitation, not the extreme limitation contemplated by the listing.  Accordingly, Jones did not meet her burden of demonstrating that C.C.J.'s impairments met the requirements of Listing 101.03, and the ALJ's determination of the same was supported by substantial evidence.  See Bledsoe, 165 F.

App'x at 411.

**D.    The ALJ Properly Evaluated the Opinion of the Treating Orthopedic Physician, Dr. Kelly**

Jones next argues that the ALJ erred by failing to properly evaluate and accord proper weight to the medical opinions of C.C.J.'s treating physician, Dr. Kelly.  (ECF No. 13 at 15.) Treating sources are accepted medical sources who have or have had an "ongoing treatment relationship" with a claimant. 20 C.F.R. § 416.927(a)(2).   ALJs assess a treating source's opinion to determine if it is consistent with the medical records and is well-supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(c)(2).  If it is, the ALJ will give the opinion controlling weight; if it is not, the ALJ will apply a set of regulatory factors to the opinion to determine what weight to give it.  Id.  ALJs should "always give good reasons" in their decisions for the weight that they gave the opinion of a treating source. Id.  However, in certain instances, such as when the "Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion[,]" it amounts to a harmless error for an ALJ to fail to comply with these regulatory requirements.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546–47 (6th Cir. 2004).  In addition, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." Morr v. Comm'r

-13-

of Soc. Sec., 616 F. App'x 210, 211 (6th Cir. 2015) (citing <u>Bogle</u> <u>v. Sullivan</u>, 998 F.2d 342, 347-48 (6th Cir. 1993)); <u>see also</u> <u>Keeler</u> <u>v. Comm'r of Soc. Sec.</u>, 511 F. App'x 472, 473 (6th Cir. 2013).

In the present case, the ALJ determined that C.C.J.'s physician, Dr. Derek Kelly, qualified as a "treating source" under the Act. <u>See</u> 20 C.F.R. § 404.1527(a)(2); <u>Smith</u>, 482 F.3d at 875. Dr. Kelly opined on two different medical source statement forms that C.C.J. was unable to ambulate effectively from February 24, 2012 to January 18, 2014. (R. 1789, 2380.) Jones contends that the ALJ's conclusions ignored Dr. Kelly's opinions. Specifically, Jones argues the ALJ's finding that she did not meet Listing 101.03 was based on personal observations, using his own "lay interpretation" of the medical evidence. (ECF No. 17.) However, the record indicates that the ALJ discussed his reasons for according Dr. Kelly's opinions regarding C.C.J.'s ability to ambulate effectively the weight that he did. For example, the ALJ noted that he accepted Dr. Kelly's opinion that C.C.J. has a marked limitation in the domain of moving about and manipulating objects. (R. 31.) The ALJ further explained that the State agency consultants had opinions contrary to those of Dr. Kelly's, but that he chose to "assign more weight" to Dr. Kelly's opinion with respect to the domain of moving about and manipulating objects. (<u>Id</u>.) The ALJ also referenced Dr. Kelly's chart notes as they

pertained to the surgical procedures for bilateral SCFE that C.C.J. underwent. (Id.) The ALJ explicitly cited Dr. Kelly's notes commenting on C.C.J.'s improvements, specifically noting his opinions that C.C.J. had a "really good gait" and that her hip range-of-motion was "as good as it has ever been" in January 2013. (R. 31.) Dr. Kelly also observed that C.C.J. was "doing quite well" and that, in July 2013, Dr. Kelly noted that she had been able to exercise and was losing a lot of weight. (R. 21.) The ALJ thus concluded that Dr. Kelly's chart notes demonstrated that Dr. Kelly's opinion in the medical source forms was inconsistent with his own records. Accordingly, the ALJ was justified in assigning less weight to this opinion, because it was inconsistent with other medical evidence in the record. This discussion is sufficient to provide good reasons, as required, for the ALJ's evaluation. See 20 C.F.R. § 416.927(c)(2). The ALJ thus adequately contemplated Dr. Kelly's opinions, and his decision to afford Dr. Kelly's opinions less-than controlling weight was supported by substantial evidence.

**E.  The ALJ Properly Concluded That Jones Did Not Establish "Good Cause" for Failing to Attend a Consultative Examination**

Finally, Jones asserts that the ALJ erred by concluding that her failure to attend the scheduled consultative examination was without "good cause." The Commissioner submits that the ALJ properly determined that C.C.J. was not disabled because she failed

to establish good cause for not attending the consultative examination that the ALJ scheduled upon remand and, thus, the remainder of her arguments are moot. The Social Security Regulations state that "[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled . . . [and] if you have any reason why you cannot go for the scheduled appointment, you should tell us about this as soon as possible before the examination date. If you have a good reason, we will schedule another examination." 20 C.F.R. § 416.918(a). Thus, failure to appear for a consultative examination may alone be sufficient to support a finding that a plaintiff is not disabled or, at the very least, be detrimental to a plaintiff's claim. See, e.g., Lepenica v. Comm'r of Soc. Sec., 107 Fed. Appx. 291, 294 n. 1 (3d Cir. 2004) (noting that a claimant who refuses to cooperate in a consultative examination without good cause may be found by the Commissioner to have no disability, solely on the basis of such refusal); Callins v. Apfel, 202 F.3d 281, 2000 WL 6193, *3 (10th Cir. 2000) (Table) (claimant who failed to appear for consultative examination without explanation found not disabled); Taylor v. Colvin, No. 5:12-CV-779-FL, 2014 WL 1233042, at *4 (E.D.N.C. Mar. 25, 2014) ("absent good cause for

failure to appear, a 'lack of cooperation' in working with consultative examiners can be 'detrimental' to a plaintiff's claim"); Gibson v. Comm'r of Soc. Sec., No. 1:13-cv-069, 2014 WL 619135, at *7-8 (S.D. Ohio Feb. 18, 2014). Examples of good reasons for failure to appear include: illness on the date of the scheduled examination; not receiving timely notice of the scheduled examination or test; being given incorrect, incomplete, or inaccurate information about the physician involved or the time or place of the examination; or having a death or serious injury occur in the immediate family. 20 C.F.R. § 416.918(b). Furthermore, the ALJ should consider the claimant's physical, mental, educational, and linguistic limitations (including any lack of proficiency with the English language) when determining if good reason for failing to attend a consultative examination exist. 20 C.F.R. § 416.918(a).

Here, in order to comply with the Appeals Council's directive to obtain additional evidence to complete the record, the ALJ ordered C.C.J. to attend an orthopedic consultative examination at Jackson Clinic North on October 16, 2013. (R. 12.) At no point, either before the ALJ or in her submissions to this court, has Jones justified her failure to attend the examination by citing to any of the reasons specifically identified as "good reasons for failure to appear." See 20 C.F.R. § 416.918(b). Rather, Jones's

attorney informed the ALJ on September 23, 2013, that C.C.J. would not be attending the consultative examination because it was an "unnecessary exercise," and at the hearing, Jones's attorney stated that she did not attend the consultative examination because Dr. Kelly was able to provide all the information required. (Id.) To be sure, an ALJ will generally not request a consultative examination until every reasonable effort has been made to obtain evidence from the claimant's own medical sources. See 20 C.F.R. § 416.912(b)(2). As the ALJ noted, Jones supplemented the record with numerous additional medical records upon remand. (R. 13.) However, the ALJ was specifically ordered by the Appeals Council to obtain additional evidence, and he was within his authority to schedule a consultative examination. See 20 C.F.R. § 416.917. Jones's assertion that the ALJ had "ample evidence" before him, and thus no need for an independent evaluation to assess C.C.J.'s condition, is not sufficient to establish good cause for failure to appear. Any determination as to the adequacy of the medical history is reserved for the ALJ, not, as Jones appears to assert, the claimant. See 20 C.F.R. § 416.912(b). It is the ALJ's responsibility to develop the medical history, and the ALJ was authorized to schedule a consultative examination to further this end. See id. At the hearing, and in her brief, Jones further asserts that there was no need to travel to Jackson, Tennessee to

have another physician "poke and prod" C.C.J., and that it would not be in C.C.J.'s best interest to subject her to an unnecessary trip from Memphis to Jackson. The ALJ noted that this argument seemed disingenuous because Jones had already made numerous visits to see physicians in Nashville. (R. 13.) The court likewise finds that the evidence in the record of C.C.J.'s travels for treatment undermines this argument. Thus, the court finds that substantial evidence supports the ALJ's conclusion that these arguments do not establish good cause for failure to appear.

Jones further asserts that she received insufficient notice that failure to attend could warrant dismissal. (ECF No. 13 at 20.) Jones admits that she received notice that "if you fail to keep this appointment, the JUDGE could make a decision based upon the evidence in your file which may not be favorable to you." (Id.) The regulations clearly state that failure to take part in a consultative examination or test which has been arranged to get information needed by the ALJ may be sufficient to find that the claimant is not disabled. See 20 C.F.R. § 416.918(a). Here, Jones was represented by counsel, who was fully capable of identifying the relevant regulation and the corresponding risk of noncompliance. The court finds that Jones has not shown that she received insufficient notice. Furthermore, Jones goes on to state that "had the ALJ made clear at the time the initial communicate

[sic] was made that he intended to deny solely on the basis of failure to cooperate, Ms. Jones likely would have reconsidered." (Id.)   This argument further undermines the previous reasons that Jones submitted as good cause for failing to appear.   The court thus finds that the ALJ applied the correct legal standard and his decision – that Jones failed to provide good cause for failing to appear at the scheduled consultative examination – was supported by substantial evidence.

Jones's argument that the ALJ and the Appeals Council erred by not obtaining a new medical opinion regarding medical and/or functional equivalency as required by Social Security Ruling ("SSR") 96-6p likewise cannot establish grounds for remand.   (ECF No. 13 at 13-14.)   SSR 96-6p provides, in relevant part:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> [1.] When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> [2.] When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p.   The ruling thus "requires an update when either (1) there is evidence of symptoms, signs[,] and findings that suggest

to the ALJ or Appeals Council that the applicant's condition may be equivalent to[the relevant listing]; or (2) when additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment does not equal the listings . . . ." <u>Courter v. Comm'r of Soc. Sec.</u>, 479 F. App'x 713, 723 (6th Cir. 2012) (quoting <u>Kelly ex rel. Hollowell v. Comm'r of Soc. Sec.</u>, 314 F. App'x. 827, 830 (6th Cir.2009)).

Here, the ALJ attempted to obtain additional medical evidence by scheduling an additional consultative examination. Jones refused to comply by failing to attend the examination the ALJ scheduled. As explained above, Jones has failed to establish good cause for missing the examination. Accordingly, this argument does not alter the court's conclusion to affirm.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

May 10, 2018
Date